IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal No.: WDQ-13-0146 |
| RODNEY SYLVESTER WIGGINS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Rodney Sylvester Wiggins ("Wiggins") is charged in a three-count indictment with Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) ("Count One"), possessing and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) ("Count Two"), and possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g) ("Count Three"). ECF No. 1. On May 19, 2014, Wiggins waived his Sixth Amendment right to a jury trial. See ECF No. 41. On May 19, 2014, the Court conducted a bench trial. By way of the accompanying Verdict, and for the following reasons, this Court will find Defendant Rodney Sylvester Wiggins guilty on all counts.

I. Findings of Fact

This case arises out of a robbery of a couple in their hotel room in Glen Burnie, Maryland on February 2, 2013. As required by Fed. R. Crim. P. 23(c), the Court makes the following findings of fact:[1]

1. On the afternoon of Saturday, February 2, 2013, Julian Thomas Davis and his wife Doris Nadine Davis checked into the Hampton Inn in Glen Burnie, Maryland. Tr. 79:22-80:19; 81:3-10; 82:24-83:6; 96:22-97:17; 99:3-8.

2. Mr. and Mrs. Davis live in Charleston, West Virginia and traveled to Maryland for the purpose of departing for a Caribbean cruise on Monday, February 4, 2013. Tr. 80:13-82:17.

3. Mr. and Mrs. Davis planned on staying at the Hampton Inn two nights. Tr. 98:10-20.

4. After checking in, Mr. and Mrs. Davis rode the hotel elevator to the third floor with their luggage. Tr. 83:17-19; 99:8-16.

5. Wiggins entered the same elevator after Mr. and Mrs. Davis, and remained on the elevator after they got off on the third floor. Tr. 83:21-84:23; 99:8-16.

---

[1] The facts are taken from this Court's recollection of trial testimony, the trial transcript (ECF No. 47) ("Tr."), and trial exhibits.

6. Shortly after Mr. and Mrs. Davis entered their hotel room, Wiggins knocked on their room door claiming to be a maintenance employee. Tr. 86:5-22; 87:4-25; 95:6-16; 99:22-101:6.

7. Mr. Davis opened the hotel room door, and Wiggins pointed a gun at Mr. Davis while demanding the couple's money, keys, credit cards, and cell phones. Tr. 88:15-20; 102:1-12; 103:6-16.

8. Wiggins threatened to shoot Mr. and Mrs. Davis. Tr. 88:16-89:13; 102:4-103:2.

9. Mr. Davis took the money from his wallet and handed it to Wiggins. Tr. 89:19-20; 90:10-11; 103:7-8.

10. Mr. Davis had withdrawn around $400 from an ATM in Charleston, West Virginia before driving to Maryland for use on their vacation. Tr. 89:21-90:8.

11. Mr. Davis believed he had about $200 in his wallet after splitting the $400 between himself and his wife. Tr. 89:21-90:8.

12. Mrs. Davis was scared and "thought [Wiggins] probably is going to shoot me." Tr. 103:20-24.

13. Mr. Davis feared for his personal safety and feared "as much, if not more so" for his wife's safety. Tr. 90:18-91:2.

14. Wiggins left the hotel room without taking any other property. Tr. 90:12-17; 103:25-104:5.

15. Mr. Davis called the front desk of the hotel to report the robbery and described the suspect to Clare Bryner, the Hampton Inn Guest Service Manager, as wearing black clothing and a hat. Tr. 34:7-8; 36:18-19; 39:2-9; 91:4-17; 104:7-8.

16. Ms. Bryner saw a man matching that description on the security monitor walking down a stairwell and leaving the hotel. Tr. 39:9-12; Ex. 6 (security video).

17. Ms. Bryner called 911 on her personal cell phone, walked outside, and saw the same man crossing Ritchie Highway toward the Days Inn hotel. Tr. 44:21-45:3; 50:7-22.

18. Ms. Bryner informed 911 of the suspect's location. Tr. 50:7-22.

19. Minutes later, Officer Joseph Solari and Detective Dominick Grossi arrested Wiggins in the parking lot of the nearby Days Inn hotel. Tr. 26:16-22; 28:12-24.

20. During a search incident to arrest, Detective Grossi recovered a handgun loaded with six cartridges from Wiggins's jacket. Tr. 28:25-29:16; 116:21-118:21.[2]

---

[2] The parties entered a stipulation that the firearm and ammunition meet the federal definitions of "firearm" and "ammunition." Ex. S2.

21. The handgun and the ammunition were manufactured outside of Maryland.[3]

22. The officers also uncovered $210 in United States currency from Wiggins. Tr. 72:17-21.

23. The Anne Arundel County police returned $210 to Mr. Davis. Tr. 93:8-94:1.

24. Shortly after his arrest, while being transported in a patrol car by Officer Solari, Wiggins made several spontaneous statements, including: "I did that shit, I fucked up but I did that shit." Tr. 31:1-24.

25. At the Northern District police station, Detective Joseph Goldberg presented Wiggins with a written copy of the Miranda rights, read each right aloud, and asked Wiggins if he understood each right. Tr. 64:25-65:4; 66:18-67:5.

26. Wiggins stated that he understood Detective Goldberg's directions, acknowledged verbally that he understood each right, and wrote "yes" on the line provided for each right along with his initials. Tr. 66:18-67:5.

27. Detective Goldberg conducted a post-arrest interview of Wiggins. Tr. 65:16-67:5.

---

[3] The parties stipulated to these facts. Ex. S1.

28. During this interview, Wiggins confirmed that he had robbed Mr. and Mrs. Davis in their hotel room by pointing a gun at them and demanding money. Tr. 71:8-16.

29. Wiggins confirmed that he took money from the couple, fled out the side door of the hotel, walked across the street to the Days Inn, and surrendered after being stopped by the police. Tr. 71:17-72:4.

30. Wiggins stated, "I'm a fucking jackass. I gave the rest of my life away because I was angry. I wish I could take it back. I should have just gotten into the cab and went home." Tr. 73:20-23.

31. Wiggins had been convicted of a crime punishable by imprisonment for a term exceeding one year before February 2, 2013, and his civil rights had not been restored.[4]

32. After the robbery, Mr. and Mrs. Davis did not stay at the Hampton Inn and instead stayed at a friend's home for two nights; they received a refund from the Hampton Inn. Tr. 104:9-22.

33. Mr. and Mrs. Davis would have paid about $94.05 to $98.80 for each night at the Hampton Inn. Tr. 54:18-55:1.

34. The Hampton Inn is a national chain with hotels around the world. Tr. 34:21-35:3.

---

[4] The parties stipulated to these facts. Ex. S3.

35. The Glen Burnie Hampton Inn purchases goods from out of state, including linen, key packets, key cards, folio paper, toiletries, and some food. Tr. 58:3-59:4.

36. Approximately 85 percent of the guests at the Glen Burnie Hampton Inn are from out of state. Tr. 59:10-14.

II. Conclusions of Law

    A.    Count One: Hobbs Act Robbery (18 U.S.C. § 1951(a))

The Hobbs Act prohibits robbery that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). The elements of a Hobbs Act robbery are (1) robbery, and (2) interference with commerce. *Stirone v. United States*, 361 U.S. 212, 218 (1960).

    1.    Robbery

Hobbs Act robbery is defined, in relevant part, as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession." 18 U.S.C. § 1951(b)(1); *see also United States v. Buffey*, 899 F.2d 1402, 1403 (4th Cir. 1990) (to establish a Hobbs Act robbery, the Government must prove that the defendant coerced the victim to part with property, and that the coercion occurred "through the wrongful use of actual or

threatened force, violence or fear or under color of official right" (internal quotation marks omitted)).

The Government has proved, beyond a reasonable doubt, that Wiggins knowingly obtained money from Mr. Davis by threatening Mr. and Mrs. Davis with a loaded firearm. Mr. Davis was afraid for his safety and the safety of his wife. Tr. 90:18-91:2. Accordingly, Wiggins committed "robbery" as defined by the Hobbs Act.

2. Interference with Commerce

The Government contends that the robbery had an effect on interstate commerce by depleting the assets of the Hampton Inn, an interstate business. *See* ECF No. 48 at 6-7. Wiggins argues there is no jurisdictional nexus in this case because the depletion of the Hampton Inn's assets was not a natural consequence of the robbery of two hotel customers. *See* ECF No. 49 at 9-10.

The Hobbs Act's jurisdictional predicate is satisfied when the robbery has a "minimal effect" on interstate commerce. *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (*citing United States v. Spagnolo*, 546 F.2d 1117, 1119 (4th Cir. 1976)). A robbery has a "minimal effect" on interstate commerce when it depletes the assets of an "inherently economic enterprise." *United States v. Tillery*, 702 F.3d 170, 174 (4th Cir. 2012) (internal quotation marks omitted). When determining

whether a robbery had a minimal effect on interstate commerce, we do not look at the impact of the immediate offense, but "whether the relevant class of acts has such an impact." *Williams*, 342 F.3d at 355 (citing *United States v. Marrero*, 299 F.3d 653, 655 (7th Cir. 2002)). The impact on commerce may be shown by "proof of probabilities without evidence that any particular commercial movements were affected." *United States v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985).

The Fourth Circuit has held that "[e]xtorting money devoted to personal use from an individual does not affect interstate commerce" in the context of a Hobbs Act violation. *See United States v. Buffey*, 899 F.2d 1402, 1406 (4th Cir. 1990). In the contexts where a jurisdictional element has been found for robbery involving a private individual, the individual was generally targeted based on his involvement with a business and the robbery or extortion targeted the proceeds of a business.[5]

---

[5] *See, e.g., United States v. Williams*, 342 F.3d 350, 355 (4th Cir. 2003) (the defendants were motivated to rob the victim because he was engaged in drug dealing); *United States v. Singleton*, 178 F. App'x 259, 264 (4th Cir. 2006) (defendants robbed the owner of a convenience store's home to obtain proceeds from the store); *Lauloudakis v. United States*, No. RDB-09-0608, 2013 WL 6036688, at *7-8 (D. Md. Nov. 12, 2013) (the government had Hobbs Act jurisdiction when the robbery targeted the victims based on their business dealings and the defendants stole business proceeds); *United States v. Simpson*, No. 7:13-CR-131-1BO, 2014 WL 1775579 at *3 (E.D.N.C. May 2, 2014) (slip copy) (finding jurisdiction where the robberies targeted delivery drivers who were engaged in business activities at the

However, when a robbery or extortion plot target an individual's personal assets alone, the jurisdictional element is not satisfied. *See Buffey*, 899 F.2d at 1406 (extortion of wealthy individual for his personal assets did not satisfy Hobbs Act jurisdictional requirement); *United States v. Wang*, 222 F.3d 234, 240 (6th Cir. 2000) (no jurisdiction when the robbery involved private citizens at their home, unrelated to their business).

A jurisdictional nexus exists when the robbery of an individual depletes assets of a business engaged in interstate commerce. *See United States v. Bengali*, 11 F.3d 1207, 1212 (4th Cir. 1993) (evidence satisfied the jurisdictional requirement when the victim withdrew money from a bank account with funds used to conduct his business and also for his personal use). It is enough that an effect on interstate commerce was "the natural, probable consequence of the defendant's actions." *Williams*, 342 F.3d at 354. There is also no requirement that the depletion of assets be of a significant amount. *See United States v. Hemingway*, 108 F. App'x 83, 84-85 (4th Cir. 2004) (robbery of Best Western for $20 satisfied jurisdictional element). The jurisdictional element is met when the connection to a business engaged in interstate commerce is not "purely

---

time, therefore the robberies targeted a business entity and not individuals).

fortuitous" or when the effect on commerce arising from the robbery of an individual "occurs by happenstance." *Singleton*, 178 F. App'x at 263.

Here, the Government has proved beyond a reasonable doubt that the Hampton Inn's assets were depleted as a result of the robbery. Mr. and Mrs. Davis had planned to stay at the hotel for two nights, but instead chose to stay at a friend's house, and the hotel provided them with a refund. The Hampton Inn lost the proceeds from those two nights. This depletion of assets is a probable consequence of a robbery of two customers in their hotel room. It is not happenstance that a robbery occurring on the premises of a hotel caused the hotel to lose customers and money. The Hampton Inn buys goods from out of state and caters to out of state customers. Because the robbery depleted the assets of a business engaged in interstate commerce, the Hobb's Act jurisdictional requirement is satisfied. *See Buffey*, 899 F.3d at 1404.[6] The Court will find Wiggins guilty on Count One.

    B.    Count Two: Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence (18 U.S.C. § 924(c))

Section 924(c) provides a mandatory, and consecutive, term of five years imprisonment for using or carrying a firearm in

---

[6] Because the Court finds that the Government proved the jurisdictional element, the Defendant's motion to dismiss for lack of jurisdiction will be denied as moot. The Defendant's other pretrial motion to suppress statements was withdrawn at trial. Tr. 8:4-8.

11

the commission of a crime of violence. 18 U.S.C. § 924(c)(1)(A)(i). 18 U.S.C. 924(c) further provides, in relevant part:

> Any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

18 U.S.C. 924(c)(1)(A)(ii). The statute defines the term "brandish" as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4).

The Government proved, beyond a reasonable doubt, that Wiggins brandished a loaded firearm during the commission of the robbery. Wiggins pointed the handgun at Mr. and Mrs. Davis, threatened to shoot them, and demanded money. The Court will find Wiggins guilty on Count Two.

  C. Count Three: Possession of Firearm and Ammunition by a Convicted Felon (18 U.S.C. 922(g)(1))

Under § 922(g)(1), a person who has been convicted of a crime punishable by imprisonment for a term exceeding one year may not possess "any firearm or ammunition" transported in interstate commerce. 18 U.S.C. § 922(g)(1).

The Government proved, beyond a reasonable doubt, that Wiggins knowingly possessed a firearm and ammunition on February 2, 2013. The parties entered a stipulation that Wiggins had been convicted of a crime punishable by imprisonment for a term exceeding one year. Wiggins used the firearm in the commission of a robbery, and it was discovered on his person during a search incident to arrest. The parties entered a stipulation that the firearm and ammunition meet the federal definitions of "firearm" and "ammunition," and that they were manufactured outside of Maryland. Thus, they traveled in interstate commerce. The Court will find Wiggins guilty on Count Three.

III. Conclusion

For the reasons stated above, the Court will find the Defendant Rodney Sylvester Wiggins guilty on all counts.

_7/23/14_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge